FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

2026 OCT -8 A 11: 35

FARZIN YAZDANI, Plaintiff,

v.

Civil Action No. 1:26 CV 3365

STEPHEN V. MIESZALA,
JUNI DAEHEE CHO, and
ELVIR HOZANOVIC,
Defendants.

**COMPLAINT UNDER 42 U.S.C. § 1983 AND VIRGINIA LAW**

**JURY TRIAL DEMANDED**

## I. JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the related Virginia-law claims under 28 U.S.C. § 1367(a).

2. Venue is proper under 28 U.S.C. § 1391(b)(2) because the events occurred in Loudoun County, Virginia, within this District and the Alexandria Division.

## II. PARTIES

3. Plaintiff Farzin Yazdani is an adult resident of Virginia.

4. Defendant Stephen V. Mieszala was a Loudoun County sheriff's deputy, badge number 3343. He handcuffed, detained and arrested Plaintiff, transported him, and initiated criminal process against him. He is sued in his individual capacity.

5. Defendant Juni Daehee Cho was a Loudoun County sheriff's deputy present during Plaintiff's detention and arrest. He physically handled and moved Plaintiff while Plaintiff was handcuffed and remained nearby during the painful restraint. He is sued in his individual capacity.

6. Defendant Elvir Hozanovic was a Loudoun County sheriff's sergeant present during Plaintiff's detention and arrest. He remained nearby during the painful restraint and responded to Plaintiff's requests for supervisory intervention. He is sued in his individual capacity.

7. Each Defendant acted under color of Virginia law. The claims arise from the same detention and arrest sequence and present common questions concerning the restraint, force, and opportunity to intervene.

## III. FACTUAL ALLEGATIONS

### A. The custody exchange and doorway encounter

8. On October 13, 2024, Plaintiff was at his brother Faraz's residence at 20496 Broad Run Drive, Sterling, Virginia, exercising parenting time with his five-year-old son. Faraz owned the residence. Plaintiff's sister-in-law Nathaly lived there but was not the titled owner.

9. The CAD records a keep-the-peace call created at 2:36:36 p.m. for a 3:00 p.m. child-custody exchange. The call notes identify a court order, no known weapons, and a requested meeting at Galilee Church on Winding Road.

10. Mieszala met Amanda McIntosh at Galilee United Methodist Church and accompanied her to the residence. McIntosh and Plaintiff are former spouses and share a child.

11. A resident whom Plaintiff knew as Nathaly, identified in Mieszala's report as Hilda Maltez, answered the door and gestured for McIntosh to enter. McIntosh declined to enter, remaining outside and requesting that Plaintiff come outside with his son. The resident went inside and asked Plaintiff to speak with McIntosh. Plaintiff came to the doorway holding his cellphone and recording the encounter. From the beginning of the recording, Plaintiff's son asked his mother to let him stay with Plaintiff. His repeated pleas intensified after Plaintiff was detained and the deputies yelled at Plaintiff.

12. Mieszala remained outside in the driveway. His report states that he did not see inside the residence.

13. Plaintiff audibly said goodbye and turned to go inside the residence. McIntosh then rushed toward the doorway after him, yelling "don't touch me," while Plaintiff retreated and closed the door. Plaintiff did not assault McIntosh.

14. Mieszala's report describes Plaintiff retreating while McIntosh followed, the door closing, and McIntosh appearing to be pushed out while telling Plaintiff to stop pushing her.

**B. Detention and force**

15. Mieszala approached and knocked. When Plaintiff opened the door and came outside, Mieszala placed him in handcuffs and said he was being detained while Mieszala investigated an alleged assault. Plaintiff was physically compliant. He verbally told Mieszala that the deputies were violating his civil rights and requested a superior officer.

16. The CAD records one person detained at 3:06:00 p.m. Plaintiff remained handcuffed under the deputies' control while the investigation continued.

17. Plaintiff told Mieszala that the handcuffs were painfully tight and hurting him. Mieszala said he would loosen them but instead tightened them further. Plaintiff suffered significant pain and visible marks on his wrists.

18. Cho and Hozanovic were present from the beginning of the relevant detention and arrest sequence. Both were nearby and close enough to hear Plaintiff's exchanges with Mieszala, including his cuff complaints. Plaintiff spoke openly to the officers around him. Both remained nearby while the painful restraint continued.

19. Beginning near the time he was handcuffed, Plaintiff repeatedly asked for a sergeant or superior officer. Neither Mieszala, Cho nor Hozanovic identified Hozanovic as the sergeant while those requests continued.

20. Cho forcefully handled and moved Plaintiff while Plaintiff was already handcuffed, repeatedly confronting and humiliating him before his family. Emily recorded this physical handling and verbal humiliation on Plaintiff's device. Plaintiff was then physically compliant, was not attempting to flee, and posed no immediate threat to the deputies or others.

21. Plaintiff remained continuously handcuffed and under close deputy control for at least 26 minutes during the recorded on-scene sequence. The painful restraint continued after his complaints.

22. Another deputy eventually identified Hozanovic as the sergeant. Plaintiff then questioned Hozanovic directly about why he had not identified himself during the repeated requests.

23. Hozanovic responded with words to the effect that he did not have to identify himself to someone who was drunk or disorderly. Plaintiff immediately offered to take a breathalyzer or another objective test. Hozanovic laughed at and dismissed the request and walked away. No test was administered, and Plaintiff's detention continued.

24. Beginning when Plaintiff opened the door, his five-year-old son repeatedly asked to stay with his father. As the encounter escalated, those pleas intensified into crying, screaming and begging to remain with Plaintiff and against his arrest. The deputies did not respond to those pleas. Plaintiff's recording captures his son's escalating pleas and distress. While Plaintiff was restrained before his family, Mieszala told him to stop speaking and threatened to yell at him in

front of his family. Plaintiff was unable to comfort his son, causing Plaintiff severe anguish and humiliation. Mieszala's incident report does not mention the child's distress.

**C. Investigation, arrest and judicial process**

25. After handcuffing Plaintiff, Mieszala continued investigating. McIntosh accused Plaintiff of pushing her and said a resident had invited her inside. The resident told Mieszala that she had gestured for McIntosh to enter. That gesture preceded Plaintiff coming to the doorway; McIntosh had declined to enter, remaining outside and requesting that Plaintiff and his son come outside to her.

26. Mieszala identified that resident in his report as Hilda Maltez and described her as an owner. Plaintiff knew her as Nathaly. Plaintiff's brother Faraz Farokhzad, not that resident witness, was the sole owner of the residence.

27. McIntosh reported no injury. Mieszala sought interior-camera footage, but it was not available for review before his arrest decision.

28. Mieszala then arrested Plaintiff for assault and battery against a family or household member. His report characterized the alleged assault as having occurred in his presence, although he had remained outside and had not seen inside the residence. Earlier in the same report, he described Plaintiff retreating while McIntosh followed and McIntosh appearing to be pushed out. Plaintiff remained handcuffed while Mieszala investigated before arresting him.

29. Mieszala reviewed Plaintiff's cellphone recording after deciding to arrest him. The recording turns away from the doorway during the encounter.

30. Mieszala confined Plaintiff in a hot, unventilated patrol car for an extended period before transport and during transport. Mieszala kept the windows closed and would not crack a

window. Plaintiff remained handcuffed and suffered extreme discomfort from the heat and lack of ventilation.

31. The CAD records Mieszala transporting one adult male in custody to the Adult Detention Center at 3:46:30 p.m. and arriving there at 4:08:44 p.m.

32. At 4:35 p.m., Mieszala swore a criminal complaint. Its attachment describes Plaintiff retreating, McIntosh following, the door closing and McIntosh appearing to be pushed out. It does not state that Mieszala could not see inside or that he initially detained Plaintiff while still investigating. The written attachment also omits the child's distress and the owner's trespass request later recorded in the CAD disposition.

33. At 4:43 p.m., the magistrate issued an arrest warrant for a violation of Virginia Code § 18.2-57.2 based on sworn statements. Plaintiff remained in custody through the magistrate process.

34. An emergency protective order was entered at 4:50 p.m. and served on Plaintiff at 4:54 p.m. At 5:03 p.m., the magistrate ordered Plaintiff released on a $2,500 unsecured recognizance.

35. The same CAD disposition also records that the owner requested that deputies advise McIntosh she was trespassed from the property, and that deputies verbally advised her she was not allowed back. Mieszala's separate incident report does not mention that request or warning. The disposition was entered at 5:53:17 p.m. on October 13, 2024; it does not specify when the request or warning occurred.

36. Plaintiff remained physically in custody after the release order and recalls being released at approximately 9:25 p.m. that day.

37. On February 3, 2025, the court ordered nolle prosequi on the prosecution's motion. No conviction resulted.

38. Mieszala appeared in multiple custody hearings involving Plaintiff and McIntosh, and testified in support of McIntosh, repeating his account of the October 13, 2024 events. In sworn testimony on April 6, 2026, Mieszala identified Plaintiff shutting the door as the conduct he observed and said the cellphone video was not clear enough to determine an assault. In discovery in the criminal case, Plaintiff received McIntosh's recording and other deputies' body-worn-camera recordings, but did not receive a body-worn-camera recording from Mieszala.

## IV. CLAIMS FOR RELIEF

### COUNT I - FOURTH AMENDMENT - UNREASONABLE SEIZURE / FALSE ARREST
### Against Mieszala

39. Plaintiff incorporates paragraphs 1 through 38.

40. Mieszala seized Plaintiff by handcuffing him, maintaining physical custody, arresting him and transporting him to the detention center.

41. Plaintiff had not assaulted McIntosh. He said goodbye and turned inside before McIntosh rushed after him toward the doorway. Mieszala observed Plaintiff retreating while McIntosh followed but did not see inside the residence. Plaintiff alleges that the facts actually known to Mieszala did not establish probable cause to arrest him for battery.

42. While Plaintiff was compliant, unarmed and under close deputy control, Mieszala continued the handcuffed detention and escalated it into arrest and transport. Cho continued forcefully handling and moving Plaintiff while he was restrained. Hozanovic remained nearby without identifying himself as the supervisor despite Plaintiff's repeated requests. The duration, degree of restraint and continued custody exceeded a reasonably limited investigatory detention without probable cause.

43. Mieszala's unreasonable pre-warrant seizure and arrest deprived Plaintiff of liberty and caused physical and emotional injury, humiliation and the expense of defending the resulting criminal charge.

## COUNT II - FOURTH AMENDMENT - EXCESSIVE FORCE / FAILURE TO INTERVENE

### Against Mieszala, Cho and Hozanovic

44. Plaintiff incorporates paragraphs 1 through 38.

45. After Plaintiff gave notice of significant cuff pain, Mieszala increased the pressure instead of loosening the cuffs and maintained the painful restraint. Plaintiff was already secured and compliant. The additional tightening and continued excessive pressure were objectively unreasonable.

46. Cho used unnecessary physical force to handle and move Plaintiff while Plaintiff was already handcuffed, compliant, not fleeing and presenting no immediate threat. His use of force under those circumstances was objectively unreasonable.

47. Hozanovic was nearby during Plaintiff's openly expressed cuff complaints and remained while the painful restraint continued. Based on his proximity, the audible complaints, his direct interaction with Plaintiff and the continuing restraint, Plaintiff alleges that Hozanovic knew of the excessive painful restraint, had a reasonable opportunity to intervene to stop it, and chose not to act. His failure to act allowed the pain and injury to continue.

48. Cho likewise was nearby during the openly expressed cuff complaints, personally handled and moved Plaintiff roughly while he was restrained, and verbally humiliated him before his family while Emily recorded on Plaintiff's device. Cho remained while the painful restraint continued. Based on those circumstances, Plaintiff alleges that Cho knew of the excessive

painful restraint, had a reasonable opportunity to intervene to stop it, and chose not to act, allowing the pain and injury to continue.

49. The challenged force occurred while Plaintiff was physically compliant and secured in handcuffs. There was no resistance, attempted escape or immediate threat requiring further painful tightening or unnecessary force. Each Defendant's liability rests on his own conduct or knowing failure to intervene.

50. The force and continuing painful restraint caused significant wrist pain, visible wrist marks, soreness and numbness, humiliation and emotional distress. Plaintiff seeks recovery for the injury each Defendant caused, without duplicate compensation for the same injury.

**COUNT III - VIRGINIA LAW - BATTERY**
**Against Mieszala and Cho**

51. Plaintiff incorporates paragraphs 1 through 38.

52. Mieszala intentionally tightened the handcuffs further after Plaintiff complained of significant pain and Mieszala said he would loosen them. Plaintiff was already secured and physically compliant. The further painful tightening was unwanted, unnecessary and unjustified.

53. Cho intentionally used unnecessary physical force to handle and move Plaintiff while Plaintiff was handcuffed, physically compliant, not fleeing and presenting no immediate threat. While doing so, Cho verbally humiliated Plaintiff before his family. Emily recorded this conduct on Plaintiff's device. The excessive physical contact was unwanted and unjustified.

54. The unjustified contacts constituted battery under Virginia law. Plaintiff seeks damages for the harm caused by each Defendant's own contact, without duplicate compensation for the same injury.

**COUNT IV - VIRGINIA LAW - FALSE IMPRISONMENT**
**Against Mieszala**

55. Plaintiff incorporates paragraphs 1 through 38.

56. Before issuance of the arrest warrant, Mieszala intentionally restrained Plaintiff against his will by handcuffing him, maintaining physical custody and arresting him. Plaintiff had not assaulted McIntosh and alleges that this restraint lacked lawful justification.

57. That unjustified pre-warrant restraint constituted false imprisonment under Virginia law and caused Plaintiff loss of liberty, humiliation and emotional distress. This claim does not challenge custody pursuant to the later warrant. Plaintiff seeks compensation without duplicate recovery for the same injury.

**COUNT V - FOURTEENTH AMENDMENT - UNREASONABLE POST-ARREST CONDITIONS**
**Against Mieszala**

58. Plaintiff incorporates paragraphs 1 through 38.

59. After arresting Plaintiff, Mieszala confined him, still handcuffed, in a hot patrol car without ventilation before transport and during transport. Mieszala kept the windows closed and would not crack a window, purposefully maintaining these conditions while Plaintiff remained physically compliant, restrained and unable to obtain relief.

60. Maintaining Plaintiff in those conditions was objectively unreasonable, lacked a legitimate safety or transportation justification, and was excessive in relation to any legitimate purpose of holding or transporting him. This treatment constituted impermissible punishment in violation of the Fourteenth Amendment.

61. Mieszala's maintenance of these conditions caused Plaintiff extreme physical discomfort and distress. Plaintiff seeks damages for that harm without duplicate recovery for the same injury.

## V. DAMAGES

62. Plaintiff suffered loss of liberty, physical pain and wrist injury, humiliation and severe anguish. He incurred criminal-defense expense and alleges resulting harm to his reputation, professional and financial interests and parenting relationship to the extent caused by the wrongful acts alleged here.

63. Plaintiff also suffered his own emotional distress from witnessing his son's crying and pleas while restrained and unable to comfort him.

64. Plaintiff seeks compensatory and, where available, nominal damages. He also seeks punitive damages separately against each Defendant whose own conduct establishes malicious intent or reckless or callous indifference to Plaintiff's federally protected rights.

## VI. PRAYER FOR RELIEF

Plaintiff requests that the Court:

A. Enter judgment in Plaintiff's favor on the claims proven;

B. Award compensatory damages for Plaintiff's proven injuries in an amount determined by the jury, without duplicate recovery for the same injury;

C. Award nominal damages where legally available;

D. Award punitive damages separately against Mieszala, Cho and Hozanovic in their individual capacities to the extent permitted by law and supported by each Defendant's own conduct;

E. Award taxable costs and reasonable attorney's fees under 42 U.S.C. § 1988 to the extent legally recoverable;

F. Award prejudgment and postjudgment interest to the extent legally available; and

G. Grant such further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable by jury.

Respectfully submitted,

Farzin Yazdani, Plaintiff Pro Se
505 E. Charlotte St.
Sterling, VA 20164
571-212-0936
certusverna@gmail.com

Date: October 8th, 2026

FILED

## LOCAL CIVIL RULE 83.1(N) CERTIFICATION

I declare under penalty of perjury that (select and complete one alternative):

2026 OCT -8 P 12:58

[X] Alternative 1: No attorney has prepared, or assisted in the preparation of, this Complaint Under 42 U.S.C. § 1983 and Virginia Law.

Farzin Yazdani
Name of Pro Se Party (Print or Type)

______________________________
Signature of Pro Se Party

Executed on: October 8th, 2026 (Date)

**OR**

[ ] Alternative 2: The following attorney prepared, or assisted in the preparation of, this Complaint Under 42 U.S.C. § 1983 and Virginia Law:

Attorney name: ______________________________

Attorney address: ______________________________

Attorney telephone: ______________________________

Farzin Yazdani
Name of Pro Se Party (Print or Type)

______________________________
Signature of Pro Se Party

Executed on: ____________________ (Date)